IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| AnnSharee Webb-Harrison, | ) | C/A NO. 4:23-cv-03812-JD-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Associates Asset Recovery, LLC, Tony Cooper, and Michelle Rodgers, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

  This matter is before the Court with the Report and Recommendation ("Report and Recommendation" or "Report") of United States Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) of the District of South Carolina (DE 44), concerning Defendants' Motion for Summary Judgment (DE 34).[1] The Report recommends granting the motion in part and denying it in part (DE 44).

  Both Plaintiff AnnSharee Webb-Harrison ("Plaintiff") and Defendants Associates Asset Recovery, LLC ("AAR"), Tony Cooper ("Cooper"), and Michelle Rogers ("Rogers") (collectively "Defendants") filed objections (DE 47, 48) and replies (DE 49, 50). Having carefully reviewed the Report, the parties' objections, and the

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

record, the Court adopts the Report (DE 44) in full and grants, in part, and denies in part, Defendants' Motion for Summary Judgment (DE 34).

## I. BACKGROUND

The Report sets forth the relevant facts and legal standards, which the Court incorporates without a complete recitation. In any event, the Court provides this summary as a brief background.

### A. Factual Background

#### 1. Alleged Harassment and Racial Slurs

Plaintiff, an African American female, worked for AAR at its Florence, South Carolina office, where Cooper was an owner and officer of AAR and Rogers was a manager in the Florence office. Plaintiff testified that Rogers and other AAR employees repeatedly referred to her as a "n****r" and a "black b****," and labeled employees who associated with her as "n****r lovers." (DE 38-19.) Rogers allegedly told another supervisor that "Debbie [was] a n****r lover" in Plaintiff's presence and remarked that "Tony [Cooper] is going to choose today," after which Plaintiff was transferred to another department. (*Id.*) Plaintiff recalls being told by management that she could wear headphones if she did not want to hear such language. (*Id.*)

In addition to verbal harassment, Plaintiff contends she received a series of racist and threatening anonymous messages through the TextNow application, which she asserts was accessed by employees on AAR's company computers. (*Id.*) These messages included references such as "slave," "b****," and "n****r." (*Id.*) Plaintiff reported the messages to management, including Cooper. (*Id.*)

#### 2. Transfers and Reduction of Responsibilities

After Plaintiff complained of discrimination, she was transferred between departments at AAR. Plaintiff asserts these transfers were not voluntary and were punitive. Following one transfer, she was reassigned to AAR's DRN department, where she alleges her responsibilities were diminished: she was excluded from training and hiring input, denied the opportunity to assume the DRN lead role, and subjected to directives that others not assist her. (DE 38-2, Frazier Aff. ¶¶ 8–10.) Plaintiff's coworker Lisa Frazier stated that another AAR owner directed her not to allow Plaintiff to participate in hiring because she was a "dark color" and that Cooper instructed her not to help or even speak with Plaintiff. (*Id.*) Plaintiff further asserts she was denied advancement opportunities when a less experienced individual was given the DRN lead position instead of her. (*Id.*)

Plaintiff also alleges she was promised a fifty-cent raise but instead received only a twenty-five-cent increase, which she contends was retaliatory and discriminatory. (DE 1, 38-19.)

### 3. June 3, 2021, Confrontation with Cooper

On June 3, 2021, Plaintiff alleges that Cooper, a significantly larger male and co-owner of AAR, confronted her by pinning her against a wall and spitting in her face. (DE 1, 38-19.) Plaintiff testified that this incident occurred after months of harassment and transfers, and she viewed it as part of the hostile work environment. Immediately after the confrontation, Plaintiff texted that her "pressure is up" and her "head is hurting." (DE 38-1.) Another co-worker described the day as "the most stressful day ever." (*Id.*)

3

### 4. Constructive Discharge and Emotional Distress

Plaintiff contends that these incidents, taken cumulatively—racial slurs, anonymous threatening messages, punitive transfers, exclusion from responsibilities, denial of promised raises, and the June 3 confrontation—rendered her working conditions objectively intolerable and left her no choice but to resign. (DE 1, 38-19.)

### B.  Procedural Posture

Plaintiff filed this action on August 3, 2023, alleging claims of race and sex discrimination, retaliation, and hostile work environment under Title VII and 42 U.S.C. § 1981, as well as state-law claims for constructive discharge, intentional infliction of emotional distress ("IIED"), assault, and battery. (DE 1.) Defendants moved for summary judgment on all claims. (DE 34.) Plaintiff filed a response in opposition (DE 38), and Defendants submitted a reply (DE 39).

## II.    REPORT AND RECOMMENDATION

On July 30, 2025, the Magistrate Judge issued the Report recommending that Defendants' Motion for Summary Judgment (DE 34) be granted in part and denied in part. (DE 44.) Specifically, the Report recommends dismissal of Plaintiff's Title VII and § 1981 discrimination claims, her Title VII and § 1981 retaliation claims, her hostile work environment claim against Defendant Cooper individually, and her state-law claim for intentional infliction of emotional distress. The Report recommends that Plaintiff's hostile work environment claims against AAR and Rogers, as well as Plaintiff's state-law assault and battery claims against Cooper, proceed to trial. (*Id.*)

As to Plaintiff's discrimination and retaliation claims, the Magistrate Judge concluded that Plaintiff had not identified a materially adverse employment action as required under Title VII and § 1981. The Report found that Plaintiff's transfers, reduction in responsibilities, and alleged reduction in promised raise did not rise to the level of significant harm recognized by the Fourth Circuit. (*Id.*) The Magistrate Judge also found insufficient temporal proximity or causal connection to support Plaintiff's retaliation claims. (*Id.*)

As to Plaintiff's hostile work environment claims, the Report recommended a divided outcome. The Magistrate Judge found that Plaintiff had presented sufficient evidence of repeated racial slurs by Rogers, corroborating testimony from co-workers, and management's inadequate responses (such as suggesting Plaintiff wear headphones rather than addressing the conduct) to create a jury question on whether her workplace was "severe or pervasive" as required under Title VII and § 1981. (DE 44.) However, the Report concluded that the evidence was insufficient to sustain a hostile work environment claim against Cooper individually, noting that the June 3, 2021, incident in which Plaintiff alleges Cooper pinned her against a wall and spat on her was not explicitly race-related and, standing alone, could not establish liability under § 1981. (*Id.*)

As to Plaintiff's constructive discharge theory, the Report did not separately address it but effectively rejected the claim by concluding that Plaintiff's work environment, while hostile, did not meet the threshold of intolerability necessary to

constitute a constructive discharge under *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004). (*Id.*)

As to Plaintiff's state-law claims, the Magistrate Judge recommended allowing Plaintiff's claims for assault and battery to proceed, finding genuine disputes of material fact regarding whether the June 3, 2021, incident occurred as Plaintiff described and whether it constituted offensive physical contact under South Carolina law. (*Id.*) Conversely, the Report recommended dismissal of Plaintiff's IIED claim, finding that the alleged conduct, while offensive, was not "so extreme and outrageous" as to meet the high threshold required under South Carolina law. (*Id.*)

In sum, the Report recommends that summary judgment be granted in favor of Defendants on Plaintiff's Title VII and § 1981 discrimination and retaliation claims, her hostile work environment claim against Cooper, and her IIED claim, but denied as to Plaintiff's hostile work environment claims against AAR and Rogers, and her assault and battery claims against Cooper. Both Plaintiff and Defendants filed timely objections and replies. (DE 47, 48, 49, and 50.)

### III.     LEGAL STANDARD

To be actionable, objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. *See United States v. Schronce*, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district

judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (2005) (citing *Thomas v. Arn*, 474 U.S. 140, 147 (1985) (emphasis added)). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this Court is not required to give any explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

### IV.  OBJECTIONS

**A.  Plaintiff's Objections**

Plaintiff advances two primary objections to the Report. First, she challenges the recommendation to dismiss her Title VII and § 1981 discrimination and retaliation claims (DE 48 at 4). In doing so, she disputes the Report's findings regarding constructive discharge, her transfers, the reduction in her raise, and the application of the "but-for" causation standard (*id.* at 5–11). Second, Plaintiff objects to the dismissal of her IIED claim, contending that the evidence, if credited, would permit a jury to find each element of that cause of action (*id.* at 13). The Court addresses these objections in turn.[2]

---

[2] Plaintiff also objects to the dismissal of her hostile work environment claim against Cooper individually, pointing to the June 3, 2021, incident in which Cooper allegedly pinned her against a wall and spat in her face. Although Plaintiff did not identify any specific grounds for this objection beyond her general hostile work environment arguments, the Court recognizes that circumstantial as well as direct evidence may establish racial motivation. *See*, e.g., *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 221 (4th Cir. 2016). The Court has, therefore, considered the June 3 incident in the context of the broader record. Even drawing all inferences in Plaintiff's favor, however, the incident is not reasonably tied to race. Cooper did not use racial language, and Plaintiff identifies no evidence connecting his physical confrontation to the race-based conduct attributed to other employees. Absent such evidence, the encounter—though sufficient to sustain state-law assault and battery claims—does not satisfy Title VII and § 1981's requirement that the harassment be "because of" race. Accordingly, under both a clear-error review and a de novo review considering circumstantial

### 1. Discrimination Claims

Plaintiff first objects to the dismissal of her discrimination claims, arguing that the Magistrate Judge misapplied the standard for adverse employment actions under Title VII and § 1981. (DE 48 at 4–6.) She contends the Magistrate Judge required "significant harm," whereas the Supreme Court in *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024), clarified that a plaintiff need only show "some harm" to the terms or conditions of employment. Plaintiff identifies these *adverse* actions:

(a) Plaintiff's transfers were punitive after Plaintiff made complaints of discrimination/racially hostile environment;

(b) Plaintiff's raise was less than promised because of her complaints of discrimination;

(c) the removal of hiring/lead responsibilities and being passed over for the DRN lead position;

(d) the June 3, 2021, confrontation with Cooper in which Plaintiff says she was pinned and spat on; and,

(e) Plaintiff's constructive discharge.

(DE 48 at 5.)

The Court recognizes the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024), which clarified that a Title VII plaintiff need only show "some harm" to a term, condition, or privilege of employment, not "significant harm." Accordingly, the Court has evaluated Plaintiff's alleged harms both individually and cumulatively, including her lateral transfers, reduction in responsibilities, diminished raise, and exclusion from leadership opportunities. Even

---

evidence, the Court adopts the Report's recommendation and dismisses this claim against Cooper individually.

viewed in combination, the record does not demonstrate that these changes left Plaintiff "worse off" in a legally cognizable sense. Her pay and benefits remained intact, she identifies no similarly situated employees treated more favorably, and her own testimony reflects interpersonal conflicts with co-workers rather than discriminatory treatment as the basis for some transfers. Accordingly, even under *Muldrow's* lower threshold, Plaintiff has not created a genuine issue of material fact as to an adverse employment action.

In addition, Plaintiff's claims fail for the independent reason that she has not identified any valid comparators for her pay equity assertion. To establish a prima facie case of discrimination in compensation under Title VII or § 1981, a plaintiff must ordinarily demonstrate that similarly situated employees outside her protected class were treated more favorably. *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004). Plaintiff does not identify any employees who were similarly situated in terms of position, responsibilities, or decision-maker, yet who received better treatment with respect to transfers, responsibilities, or *raises*. This absence of comparator evidence provides an additional, independent basis for granting summary judgment on her discrimination claims. The Court, therefore, concludes that Plaintiff has not established a genuine issue of fact sufficient to revive her discrimination claims, and overrules Plaintiff's objection.[3]

---

[3] Plaintiff's Complaint also alleged sex discrimination under Title VII and § 1981. The Report recommended dismissal of those claims, and Plaintiff did not raise any specific objection to that recommendation. Accordingly, the Court reviews for clear error only, finds none, and adopts the Report's recommendation dismissing Plaintiff's sex discrimination claims. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

### 2. Retaliation Claims

Plaintiff next objects to the dismissal of her retaliation claims, contending that the Magistrate Judge conflated the standards for discrimination and retaliation and improperly applied a "but-for" test to her claims. (DE 48 at 12–14.) She asserts that temporal proximity between her protected activity (complaints of harassment) and subsequent transfers, loss of responsibilities, and exclusion from hiring support an inference of causation. (DE 48 at 12–14.)

The Court finds Plaintiff has not met her burden. Under *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013), retaliation claims under Title VII require proof that the protected activity was a "but-for" cause of the adverse employment action. Even crediting Plaintiff's testimony, the record lacks evidence connecting the alleged transfers and diminished responsibilities to her protected activity. Plaintiff does not identify when specific transfers occurred in relation to her complaints, and she resigned in June 2021, months after the last alleged racial remarks in early 2021. (DE 49 at 5–6.) Such temporal gaps undercut any causal inference. Moreover, Plaintiff points to no comparator evidence demonstrating differential treatment of other employees who did not complain.[4] Accordingly, the Court concludes Plaintiff's retaliation claims fail as a matter of law.

### 3. Constructive Discharge

---

[4] The Fourth Circuit has made clear that absent close temporal proximity, plaintiffs must present additional evidence—such as inconsistent explanations, comparators, or other indicia of retaliatory animus—to survive summary judgment. *See Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006). Here, Plaintiff offers none. This lack of comparator or circumstantial evidence provides an independent basis for dismissal of her retaliation claims.

In support of her discrimination and retaliation claims, Plaintiff also presses a constructive discharge theory, arguing that repeated slurs, punitive transfers, loss of responsibilities, and the June 3, 2021, confrontation rendered her working conditions intolerable. Constructive discharge is recognized as a form of adverse employment action when an employer deliberately makes working conditions so intolerable that a reasonable person would feel compelled to resign. *Green v. Brennan*, 578 U.S. 547, 555 (2016).

The Court has considered the full record in its entirety, rather than isolating any single event. Even so, no reasonable jury could find intolerability under the demanding *Suders* standard. Plaintiff remained employed for months after reporting racial remarks, continued working with supervisors, and contemporaneous messages reflect dissatisfaction with pay rather than harassment as the precipitating cause of her resignation. While the Court does not minimize the offensive conduct alleged, the cumulative evidence falls short of demonstrating conditions so extraordinary that a reasonable person would have felt compelled to resign. The Supreme Court has made clear that the constructive discharge standard is higher than that required to establish a hostile work environment. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004). Because Plaintiff has not shown that her workplace conditions crossed this higher threshold, her constructive discharge theory cannot proceed. Accordingly, the Court overrules Plaintiff's objection.

**4. Intentional Infliction of Emotional Distress**

Finally, Plaintiff objects to the dismissal of her IIED claim, asserting that the cumulative effect of racial slurs, anonymous text messages, diminished responsibilities, and the June 3, 2021, confrontation constitutes "extreme and outrageous" conduct. (DE 48 at 9–10, 13.) To prevail on an IIED claim under South Carolina law, Plaintiff must establish: (1) that Defendants intentionally or recklessly inflicted severe emotional distress, or were certain or substantially certain that such distress would result from their conduct; (2) that the conduct was so extreme and outrageous as to exceed all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community; (3) that Defendants' conduct caused her emotional distress; and (4) that the emotional distress was so severe that no reasonable person could be expected to endure it. *Hansson v. Scalise Builders of S.C.*, 374 S.C. 352, 356–57 (2007).

As the Report emphasized, while Plaintiff's allegations may support statutory discrimination claims, they do not meet the heightened threshold for "extreme and outrageous" conduct under South Carolina law. (DE 44 at 31–32.) Whether conduct is sufficiently outrageous is a question for the Court in the first instance. *Butts v. AVX Corp.*, 292 S.C. 256, 355 S.E.2d 876, 879 (Ct. App. 1987). Here, the alleged racial slurs, anonymous text messages, and Cooper's confrontation, though serious, are not the kind of conduct that courts in South Carolina have found to "exceed all possible bounds of decency."

Accordingly, the Court finds no error in the Magistrate Judge's recommendation, and Plaintiff's objection on this ground is overruled.

**B.     Defendants Objections**

Defendants raise four principal objections to the Report. First, they challenge the recommendation that Plaintiff's hostile work environment claims against AAR and Rogers survive summary judgment, contending that the evidence is insufficient to meet the "severe or pervasive" standard. (DE 47 at 5–7, 8–9, 10–12.) Second, they object to the Magistrate Judge's reliance on certain alleged statements, arguing that some evidence was mischaracterized or unsupported in the record. (*Id*. at 2–3.) Third, Defendants contest the recommendation that Plaintiff's assault claim against Cooper proceed, asserting that the June 3, 2021, incident does not amount to actionable assault. (*Id*. at 12–15.) Fourth, they object to the recommendation that Plaintiff's battery claim against Cooper proceed, arguing that no genuine issue of material fact exists as to offensive physical contact. (*Id*.) The Court addresses each objection in turn.

**1.  Hostile Work Environment (AAR and Rogers)**

Defendants first argue that the Magistrate Judge erred in recommending denial of summary judgment on Plaintiff's hostile work environment claims under Title VII and § 1981. They contend Plaintiff's testimony is vague and conclusory and that her evidence does not demonstrate conduct sufficiently "severe or pervasive" to alter the conditions of employment. (DE 47 at 5–7, 8–9.) They further argue that Rogers' alleged remarks were isolated, that the "slave" epithet was misattributed, and that the anonymous TextNow messages are inadmissible and cannot be tied to AAR employees. (*Id*. at 10–12.)

13

The Court disagrees. A hostile work environment claim requires proof of unwelcome conduct based on a protected characteristic that is sufficiently severe or pervasive to create an abusive environment and can be imputed to the employer. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998). Here, Plaintiff presented evidence of repeated racial epithets by Rogers, corroborated by co-workers, as well as management's inadequate responses, such as suggesting Plaintiff wear headphones rather than addressing the harassment. (DE 44 at 26–27.) Such responses, if credited, permit a reasonable jury to find that AAR tolerated or even condoned racially hostile conduct. The Court, therefore, adopts the Magistrate Judge's recommendation that these claims proceed.

### 2. Reliance on Certain Alleged Statements

Defendants next object to what they characterize as the Magistrate Judge's reliance on unsupported statements, including testimony or documents they argue were mischaracterized by Plaintiff. (DE 47 at 2–3.) For example, Defendants dispute that Rodgers ever called Plaintiff a "slave" or that certain text messages were sufficiently tied to AAR.

The Court finds this objection unavailing. At summary judgment, the Court's role is not to weigh credibility but to determine whether the evidence, taken in the light most favorable to Plaintiff, creates a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Magistrate Judge correctly observed that there was corroborating testimony regarding racial slurs and that management was aware of concerns about racially offensive text messages. (DE

14

44 at 26–28.) Even if some individual statements are disputed or later prove inadmissible, the cumulative evidence is sufficient at this stage to allow a jury to evaluate the existence of a racially hostile environment.

### 3. Assault Claim Against Cooper

Defendants also contest the recommendation that Plaintiff's assault claim against Cooper survive summary judgment. They argue that the June 3, 2021, incident does not constitute actionable assault and that Plaintiff's account is contradicted by witness testimony. (DE 47 at 12–15.)

The Court agrees with the Magistrate Judge that this claim presents a factual dispute inappropriate for resolution at summary judgment. To establish assault under South Carolina law, a plaintiff must show conduct placing her in reasonable fear of bodily harm. *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 867 (D.S.C. 2015). Plaintiff testified that Cooper, a significantly larger male, pinned her against a wall and spit in her face, which she perceived as threatening and physically intimidating. (DE 38-19 at 148:1–23.) A co-worker contemporaneously described that day as "the most stressful day ever," and Plaintiff texted that her "pressure is up" and her "head is hurting" immediately afterward. (DE 38-1.) Although Defendants point to Shane Foster's ("Foster") testimony that he did not see Cooper spit intentionally, Foster conceded that the encounter became heated and aggressive, and it was possible Cooper spit while speaking. Resolving these factual conflicts is the province of a jury, not the Court.

### 4. Battery Claim Against Cooper

15

Finally, Defendants object to the recommendation that Plaintiff's battery claim against Cooper survive summary judgment, arguing that the record does not show offensive physical contact. (DE 47 at 15.)

The Court again agrees with the Magistrate Judge that this claim should proceed. Under South Carolina law, battery is the actual infliction of any unlawful, unauthorized touching of another person, regardless of the degree of force. *Mellen v. Lane*, 377 S.C. 261, 659 S.E.2d 236, 238 (Ct. App. 2008). Plaintiff testified that Cooper physically restrained her by pinning her against a wall and spat on her. (DE 38-19 at 148:1–23.) If believed, this testimony is sufficient to establish an intentional, offensive touching. Defendants' argument that the conduct was not racially motivated is irrelevant to the viability of the state-law tort. Accordingly, the Court finds summary judgment inappropriate.[5]

In sum, the Court concludes that Defendants' objections are sufficiently specific to trigger de novo review. However, for the reasons stated above, the Court overrules their objections.

## V.   CONCLUSION

---

[5] Defendants also argue, for the first time in their objections, that Plaintiff's assault and battery claims are barred by the exclusivity provision of the South Carolina Workers' Compensation Act. This contention is unavailing for two reasons. First, the argument is waived because it was not raised in Defendants' summary judgment briefing, and a party may not assert a new ground for dismissal for the first time in objections to a magistrate judge's report. *See Gillaspie v. Del. Toro*, No. 2:19-cv-00453-DCN-MHC, 2022 WL 888195, at *51 (D.S.C. Mar. 29, 2022). Second, even if preserved, the argument fails on the merits. South Carolina law makes clear that intentional torts fall outside the Act's exclusivity provision. *See Poch v. Bayshore Concrete Prods./S.C.*, 386 S.C. 13, 23, 686 S.E.2d 689, 694 (Ct. App. 2009); *Dickert v. Metro. Life Ins. Co.*, 311 S.C. 218, 222, 428 S.E.2d 700, 702 (1993). Plaintiff's allegations—that an owner of AAR intentionally restrained and spat on her—describe intentional conduct not shielded by workers' compensation.

The Court has conducted a de novo review of those portions of the Report and Recommendation to which the parties filed specific objections. While the Court adopts the Report's recommendations in full as to the ultimate disposition of claims, it does so with certain clarifications of reasoning. Specifically, the Court applies the Supreme Court's recent standard in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), considers Plaintiff's constructive discharge theory cumulatively rather than in isolation, and acknowledges that circumstantial as well as direct evidence can establish racial motivation in hostile work environment claims. Even under these clarified standards, Plaintiff's objections do not raise a genuine dispute of material fact sufficient to survive summary judgment.

Accordingly, Plaintiff's objections (DE 48) are **OVERRULED**, and Defendants' objections (DE 47) are likewise **OVERRULED**. The Court, therefore, **ADOPTS** the Magistrate Judge's Report and Recommendation (DE 44), as clarified herein.

Defendants' Motion for Summary Judgment (DE 34) is **GRANTED IN PART** and **DENIED IN PART**. Specifically:

1. Plaintiff's discrimination claims under Title VII and § 1981 are **DISMISSED**;
2. Plaintiff's retaliation claims under Title VII and § 1981 are **DISMISSED**;
3. Plaintiff's hostile work environment claim against Defendant Cooper individually is **DISMISSED**;
4. Plaintiff's claim for intentional infliction of emotional distress is **DISMISSED**;
5. Plaintiff's hostile work environment claims against AAR and Rogers survive summary judgment; and
6. Plaintiff's assault and battery claims against Cooper survive summary judgment.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
September 18, 2025

**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this order within thirty (30) days from this date under Rules 3 and 4 of the Federal Rules of Appellate Procedure.